**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zounds Hearing Franchising, LLC, an Arizona limited liability company; and Zounds Hearing Inc., a Delaware corporation, | No. CV-16-01462-PHX-NVW |
| | (Consolidated) |
| Plaintiffs, | |
| v. | **ORDER** |
| Edward T. Bower and Barbara Bower, husband and wife; and Lend Me Your Ears, Inc., an Ohio corporation; | **[Re:  No. CV-16-01462-PHX-NVW]** |
| Defendants. | |
| Zounds Hearing Franchising, LLC, an Arizona limited liability company; and Zounds Hearing Inc., a Delaware corporation, | No. CV-16-01465-PHX-NVW |
| Plaintiffs, | |
| v. | |
| Frank R. Graziano and Mary E. Graziano, husband and wife; and FNM Enterprises, Inc., an Ohio corporation, | |
| Defendants. | |
| Zounds Hearing Franchising, LLC, an Arizona limited liability company; and Zounds Hearing Inc., a Delaware corporation, | No. CV-16-01467-PHX-NVW |
| Plaintiffs, | |
| v. | |
| Glenn Harbold, an individual; and Perfect Clarity LLC, an Ohio limited liability company, | |
| Defendants. | |

| | |
|---|---|
| Zounds Hearing Franchising, LLC, an Arizona limited liability company; and Zounds Hearing Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Lawrence R. Woerner and Nancy Woerner, husband and wife; Susan Steigerwald and David Steigerwald, husband and wife; Lawrence W. Woerner and Rosemarie Woerner, husband and wife; and WOCO Franchise LLC, an Ohio limited liability company,<br><br>Defendants. | No. CV-16-01470-PHX-NVW |
| Edward T. Bower; Lend Me Your Ears, Inc.; Frank Graziano; FNM Enterprises, Inc.; Glenn Harbold; Perfect Clarity, LLC; Lawrence Woerner; WOCO Franchise, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Zounds Hearing Franchising, LLC; Zounds Hearing, Inc.; Frannet, LLC; Jose Torres, dba Frannet of South Florida; Todd Pfister; FranChoice, Inc.; Chris L. Cynkar<br><br>Defendants. | No. CV-17-00728-PHX-NVW |

Statutes in most states protect investors in franchises by, among other things, requiring certain disclosures, prohibiting certain contract terms in franchise agreements, requiring others, and giving certain rights whether or not stated in the franchise agreements. *See* Mitchell J. Kassoff, *Complex of Federal and State Laws Regulates Franchise Operations as Their Popularity Grows*, 73 N.Y. St. B. J. 48 n.5 (Feb. 2001) (listing 33 states). If an in-state franchisor selling an in-state franchise to an in-state franchisee tried to escape those obligations by writing in his franchise agreement that the franchisee agrees he does not have to comply with those laws, he would be laughed out of court. That is because the very nature of such statutes is to impose obligations on

people that override what they might otherwise agree to among themselves.  Such statutes say what you cannot agree to.

Indeed, it is in the nature of investor protection statutes generally that they override the "freedom of contract" of investors to waive their statutory rights in advance. That is the whole point of such statutes.  For example, sellers of securities cannot excuse themselves from state securities laws by saying in their offering that the buyer agrees the state's securities laws do not apply to the seller—or that the laws of some more lenient state will apply instead of the laws of the state of the offering.

A few states like Arizona have no special protections for investors in franchises. In Arizona any contract term and anything short of fraud will go.  It is now common for franchisors in *laissez faire* states like Arizona to try to immunize themselves from the investor protection laws of the states in which they do business by saying it is so in their contracts.  They include in the franchise agreement a provision choosing the law of a state other than the state where the franchise operates, a state with lesser or no franchisee protections.

The question posed in this case is whether such a contract term is valid, whether an out-of-state franchisor can avoid local investor protection statutes by getting the investor to agree that local law does not apply and the law of some other state applies instead.  The cases are surprisingly diverse on this question.  The diversity–and the error of some of the cases—arises from courts' attempts to apply the highly abstract methodology of the Restatement (Second) of Conflict of Laws § 187 and 188 (1971).

The answer is clearly no.  Under choice-of-law principles, parties cannot circumvent by contract the investor protections a state provides to all within its boundaries, especially for its own residents.  The state of the franchise situs is the state whose laws would apply in the absence of an effective choice of law by the parties—*i.e.*, the state with the most significant relationship to the transaction and the parties.  *See* Restatement (Second) of Conflict of Laws §§ 187(2)(b), 188 (1971).  Under the better analysis, that is so even if the franchisee being protected is a resident of a different state.

But in this case the franchisees are residents of the state of the situs of the franchise, and the state that has the strongest interest in protecting its own residents. The Restatement (Second) of Conflicts of Laws does not present a bright line rule, but the Comments do present an analysis with a clear result. Cases that miss that result are to be forgiven but not followed.

This is an easy case. It is triply easy. First, the franchise and the franchisees are both located in Ohio. In those circumstances, a foreign-domiciled franchisor may not "contract" out of the Ohio protections any more than an Ohio-domiciled franchisor could. There is no scenario in which another state would have a materially greater interest in having its less protective franchise laws applied than the more protective laws of the state in which the franchisee resides and the franchise operates. Without that materially greater interest in another state, it is beyond the power of the parties to contract for application of the other state's law.

Second, even if the franchisee were out-of-state, the state of location of the franchise would still have a materially greater interest in having its protective franchise laws applied than the state of the franchisor with less protective laws.

Third, if there were any doubt that the investor protection franchise laws override parties' ability to contract out of them, and thus are fundamental state policy, the Ohio statute says it a second time: that the franchisee protection laws are fundamental policy of Ohio out of which the parties cannot contract. It is not necessary for a state to say twice that its law controls whether or not the parties agree. But Ohio did say it twice.

Investor protection franchise laws reflect a fundamental policy of a state as to what contract terms are permitted and legal for investments and businesses in the state. Franchisors may not exempt themselves from such laws merely by entering into the forbidden contract terms and adding that the law of some other state will substitute. *See* Restatement (Second) of Conflict of Laws § 187 cmt. g ("[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.")

The cases on validity of franchise choice-of-law clauses call for more extended review, with harmonization where possible and rejection where necessary.

## I.    BACKGROUND

Before the Court is the Zounds Defendants' Renewed Motion to Dismiss Amended Complaint or, Alternatively, to Stay Proceedings and Compel Mediation. (Doc. 43.)  Zounds Hearing Franchising, LLC, is an Arizona limited liability company that franchises third parties to operate hearing aid centers under the Zounds trade name. Its parent company, Zounds Hearing, Inc., is a Delaware corporation that sells Zounds approved products.  Both companies have their principal place of business in Arizona. They will be referred to as "Zounds."  In 2013, Zounds entered into franchise agreements with four Ohio companies and their owners ("the Franchisees") to operate hearing aid centers in Ohio.

As is common among state franchise laws, the Ohio franchise statutes protect buyers of franchises and other business opportunity plans by limitations and prohibitions on the kinds of terms that may be included in franchise agreements. They commonly track or exceed the disclosures and protections afforded under Federal Trade Commission Rule, 16 C.F.R. Part 436, which are enforceable only by the FTC and not by private right of action.  *See* 1 W. Michael Garner, *Franchise and Distribution Law and Practice* 6.3-6.4 (2016) (summarizing state laws).  The state franchise disclosure statutes are enforceable by the wronged franchisees themselves.

The franchises fared poorly and two are already out of business.  On May 11, 2016, the Franchisees filed an action in Ohio state court alleging Zounds violated the Ohio Business Opportunity Purchasers Protection Act.  They allege specifically that Zounds' franchise agreements failed to give a five-day cancellation right as required by Ohio Rev. Code § 1334.06, and that Zounds made false, misleading, and/or inconsistent representations in connection with the sale of the franchises in violation of Ohio Rev. Code § 1334.03.  They assert that during a pre-signing "discovery day" agents of Zounds

made statements regarding the revenue the Franchisees might expect to receive and showed them purported monthly financial results of an affiliated Zounds franchise on a whiteboard, which were not in the mandatory disclosure documents and could not be substantiated.  At oral argument counsel acknowledged that the Franchisees will prevail under Ohio law and will fail under Arizona law.  Zounds responded the next day by filing four separate declaratory judgment actions in this Court in Arizona.

The franchise agreements include identical provisions regarding choice of Arizona law, exclusive Arizona venue, and mandatory pre-suit mediation in Arizona at the sole option of Zounds.  Section 22(A) provides, "This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona, without reference to Arizona's conflict of law principles."  Section 22(E) provides that "any actions arising out of or related to this Agreement must be initiated and litigated in the state court of general jurisdiction closest to Phoenix, Arizona or, if appropriate, the United States District Court for the District of Arizona."  Section 22(C) provides that, at Zounds' election, Franchisees must mediate their disputes in Arizona before filing suit.  But the section is more than a mediation clause; it precludes the Franchisees from ending mediation and suing until either Zounds or the Mediator consents.  Zounds is free to terminate whenever it wants.

Zounds' four actions in this Court seek declarations that the term for pre-suit mediation in Arizona "is valid and enforceable and that mediation must occur in Phoenix, Arizona, as a condition precedent to the suit Defendants filed in Ohio."  Zounds burdened the Franchisees with four lawsuits in this distant forum to have this Court instruct the Ohio court how to rule on a defense in the Ohio lawsuit.  This Court consolidated those four actions on June 30, 2016, under Rule 42, Federal Rules of Civil Procedure, and Local Rule LRCiv 42.1, notwithstanding the franchise agreements' attempt to disable this Court from using those rules in the administration of its cases.

Zounds removed the Ohio action to federal court and then moved to dismiss or transfer to Arizona, thus presenting for decision in the Ohio court the very issue on which

it had sued the Franchisees four times in this Court—whether the Ohio franchise statutes trump the franchise agreements' Arizona choice of law and venue provisions or vice versa. The Ohio Federal court expressly did not decide that question but instead transferred the Ohio case to this Court solely in its discretion under 28 U.S.C. § 1404(a) for the convenience of parties and witnesses. All further motions were expressly left to this Court to decide. By agreement of the parties, the transferred case was consolidated here with the four Arizona cases.

In light of the transferor court's limited ruling, Zounds filed this Renewed Motion, which poses the question the Ohio court did not decide, whether the franchise agreements successfully exempt Zounds from Ohio's franchise disclosure laws, including the prohibition of out-of-Ohio venue terms, or the Ohio laws govern and invalidate the Arizona venue and choice of law clauses. (Doc. 43.) The Ohio statutes govern and the contrary terms in the franchise agreements are invalid. The Motion will be denied, and the case originally filed in Ohio will be transferred to the Northern District of Ohio under the mandatory Ohio venue term of the Ohio statutes.

## II. OHIO LAW GOVERNS AND THE ARIZONA VENUE AND CHOICE OF LAW TERMS OF THE FRANCHISE AGREEMENTS ARE INVALID

"A federal court sitting in diversity must apply the forum state's choice of law rules." *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Arizona and Ohio both follow the Restatement (Second) of Conflict of Laws (1971) ("Restatement") when deciding whether a contractual choice of law is valid and enforceable. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266, 77 P.3d 439, 441 (2003); *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 439, 453 N.E.2d 683, 686 (1983).

Under the Restatement as pared down for this case, there are three steps: (1) as a starting point, the law of the state with the most significant relationship to the transaction and the parties governs and (2) if the parties chose the law of another state, the law of the chosen state will govern (3) unless it would be contrary to fundamental policy of the state

with the most significant relationship to the transaction and the parties and that state has a materially greater interest than the chosen state in the determination of the particular issue.

### A. Ohio Is the State with the Most Significant Relationship to the Transaction and the Parties

The rules for finding which state's laws would apply in the first place are found in the Restatement § 188 and § 6. Section 6 states a non-exclusive list of factors relevant to choice of the applicable rule of law:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § (6).

With respect to an issue in contract, the Restatement § 188 states additional focused rules and contacts to be considered in determining the law applicable to an issue:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

- 8 -

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,

> (b) the place of negotiation of the contract,

> (c) the place of performance,

> (d) the location of the subject matter of the contract, and

> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188.

The factors listed in § 188 and § 6 are at a high level of generality and they apply issue by issue. Many rules of contract are gap-filling rules concerning interpretation or other matters in which a state has a weak interest in application of its own default rules and the parties have a strong interest avoiding disputes over which body of rules to look to.

> All states have gap-filling rules . . . and indeed such rules comprise the major content of contract law. What is important for present purposes is that a gap in a contract usually results from the fact that the parties never gave thought to the issue involved. In such a situation, the expectations of the parties with respect to that issue are unlikely to be disappointed by application of the gap-filling rule of one state rather than of the rule of another state. Hence with respect to issues of this sort, protection of the justified expectations of the parties is unlikely to play so significant a role in the choice-of-law process. As a result, greater emphasis in fashioning choice-of-law rules in this area must be given to the other choice-of-law principles mentioned in the rule of § 6.

Restatement (Second) of Conflict of Laws § 188 cmt. b.

However, "[f]ulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interest and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties." Restatement (Second) of Conflict of Laws § 187 cmt. g. Some rules, especially regulatory statutes, reflect a strong state policy about what conduct is forbidden or required within the state. Where people are not allowed to do things in a state, the chosen exercise of the police power of the state would be defeated by allowing parties to grant themselves extraterritoriality by contract. On such issues, the location of the conduct will usually trump all other considerations.

Here the issues—mandatory and robust investment disclosures, prohibition of other financial representations outside the disclosure documents, substantively prohibited contract terms, five-day cancellation rights stated on the face of the document, prohibition of out-of-state choice-of-law provisions, prohibition of inconvenient forums—go to the core of minimum business fairness and honesty Ohio chooses for sales of franchises in its territory, whether bought by residents or not. They protect Ohio's police power over conduct within its boundaries, not just the forms and interpretation of contracts.

A state has an especially strong interest in protecting its residents by such statutes.[1] In this case the Franchisees all reside and operate their franchises in Ohio. On the issues in this case, the Ohio statutes protect purchasers of franchises and other types of business opportunity plans, where Arizona law does not. The Franchisees will prevail under the Ohio statutory rules of decision, and Zounds will prevail under the Arizona

---

[1] *See, e.g.*, *Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 468 (E.D. Pa. 2007) (noting the franchise laws of California, New York, and Wisconsin express strong state policies favoring their application to protect their citizens); *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 133-34 (7th Cir. 1990) (same with respect to the franchise laws of Wisconsin, Minnesota, and Indiana).

Franchise choice of law cases are legion. Only representative cases are cited.

regime of no regulation. The Ohio domicile, situs, and statutory purpose of investor protection outweigh any factors favoring application of any other state's laws. They far outweigh any theoretical interest of Arizona in enabling its residents, by virtue of their Arizona domicile and superior bargaining power, to project Arizona *laissez faire* investment policy into states that protect buyers, wherever domiciled, of investments in their state through disclosures and prohibition of certain contract terms. The Comment to the Restatement so states:

> [T]he state where a party to the contract is domiciled has an obvious interest in the application of its contract rule designed to protect that party against the unfair use of superior bargaining. And a state where a contract provides that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice. . . . And a state may have little interest in the application of a statute designed to regulate or deter a certain business practice if the conduct complained of is to take place in another state.

Restatement (Second) of Conflict of Laws § 188 cmt. c.

Indeed, the state where the franchise is located and the franchisee is domiciled will always have the most significant relationship to the transaction and the parties if that state's investor protection laws are stronger and there is a conflict between that law and the law of the chosen state. This Court so holds as a general rule.[2]

---

[2] *See, e.g.*, *Wright-Moore Corp.*, 908 F.2d at 132-34 (applying Indiana franchise law despite choice of New York law provision in franchise agreement where potential franchisee was incorporated and located in Indiana and the principal place of business of its franchise would be in Indiana); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001) (applying Montana franchise law despite choice of Maryland law provision in franchise agreement where some but not all franchisees resided in Montana and the franchise was located there); *Cottman Transmission Sys.*, 492 F. Supp. 2d at 466-71 (allowing claims under franchise laws of California, New York, and Wisconsin despite choice of Pennsylvania law in franchise agreements where franchisees resided and operated their franchises in those three states); *Pinnacle Pizza Co., Inc. v. Little Caesar Enters.*, 395 F. Supp. 2d 891, 898 (D.S.D. 2005) (applying South Dakota franchise laws despite choice of Michigan law provision in franchise agreement where franchisees resided and operated their franchises in South Dakota).

**B. Contractual Choice of the Less Protective Arizona Law for the Issues in this Case Is Contrary to Fundamental Policy of Ohio and Is Therefore Invalid**

### 1. General Analysis under the Restatement (Second) of Conflict of Laws § 187

The Restatement § 187 states the test for whether the parties' choice of law is valid and enforceable:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless* either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > *(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.*
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Laws § 187 (emphasis added).

The factors and considerations on whether the defeated state policy is fundamental for purposes of the Restatement § 187(b)(2) overlap the factors of the Restatement § 6 and § 188 concerning which state has the most significant relationship to the transaction and the parties. The Ohio laws here are substantive state policy grounded in prohibited and mandatory conduct concerning business and investment integrity. The heightened

protections for franchisees are the very ones on which this lawsuit turns: mandatory, complete, and true written disclosure statements, Ohio Rev. Code § 1334.02; five-day cancellation right on the face of the franchise agreement, *id.* § 1334.06; prohibition of false or misleading statements and any representations in addition to or inconsistent with the disclosures, *id.* § 1334.03; civil and criminal sanctions, *id.* §§ 1334.08, 1334.99; rescission and treble damages or $10,000 minimum, plus reasonable attorney fees, *id.* § 1334.09. It is hard to see how a statute making something a crime is not fundamental policy, such that a party can commit the crime in the state and contract his way out of the liability. *See, e.g.*, *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 65 F.R.D. 624, 632 (D. Nev. 1974), *rev'd on other grounds*, 533 F.2d 486 (9th Cir. 1976) ("[T]he punitive provisions of [contractor-licensing statute] express a strong public policy of Nevada. This legislative desire to punish those who ignore the statutory command can even be termed a fundamental policy.").

We have not examined every statute in every state that provides special protections for franchise buyers, but it hard to imagine that any such statute will ever be any less than fundamental policy of the state, in the sense that the state intends that a franchisor need only enter into the forbidden contract to escape the statute forbidding the contract. Under this view, it would not matter either that the franchisee is out of state. As a matter of statutory construction, a state's declaration of protection of business and investment integrity within its boundaries is not silently limited to protecting only its own residents. If a statute said so straight out, it would violate the Privileges and Immunities Clause of Article IV, Section 2, of the United States Constitution. ("The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.")

The Ohio franchise regulation statutes and those in similar states always reflect fundamental policy of the state, and a contractual choice of the law of a less protective state cannot defeat the state's protection for an in-state franchise and franchisee. The

cases to the contrary are unpersuasive and in two states have been overturned by statutory amendment.[3]

## 2. The Ohio Statutes Expressly State They are Fundamental Policy

In 2012 the Ohio legislature amended the Act to state explicitly that it embodies a fundamental policy of the state in response to an aberrant ruling in *Tele-Save Merchandising Co. v. Consumers Distributing Co.*, 814 F.2d 1120 (6th Cir. 1987), which held otherwise. That ruling has been criticized by judges and scholars alike.[4] The newly added language in the amendments is underlined below:

---

[3] *See, e.g.*, *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357 (6th Cir. 1993) (reasoning the Michigan franchise disclosure statute "is not so strongly worded" as other states' laws and, therefore, did not reflect a state policy strong enough to void choice of Georgia law provision in franchise agreement); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120 (6th Cir. 1987) (reasoning the Ohio franchise disclosure statutes did not invalidate choice of New Jersey law provision in franchise agreement where contacts were fairly evenly divided between Ohio and New Jersey; the parties were of similar bargaining strength; and application of New Jersey law would not be contrary to fundamental policy of Ohio); *Modern Comput. Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734 (8th Cir. 1989) (en banc) (applying the *Tele-Save* analysis to conclude that the Minnesota Franchise Act did not invalidate choice of Nebraska law provision; concluding further that although the Act "undeniably does evince a policy in favor of offering franchisees in Minnesota remedies greater than those available under traditional common law . . . [the state also has] a powerful countervailing policy: Minnesota's traditional willingness to enforce parties' choice of law agreements"), *superseded by statute*, Minn. Stat. § 80C.21, *as amended by* 1989 Minn. Laws 1989 ch. 198, § 2; *Zounds Hearing Franchising, LLC v. Moser*, No. CV-16-00619-PHX-DGC, 2016 WL 6476291 (D. Ariz. Nov. 2, 2016) (reasoning the Florida Franchise Misrepresentation Act did not invalidate choice of less-protective Arizona law for a Florida franchise sold to a Florida domiciliary); *Sherman v. PremierGarage Sys., LLC*, No. CV-10-0269-PHX-MHM, 2010 WL 3023320 (D. Ariz. July 30, 2010) (same).

[4] *See, e.g.*, George F. Carpinello, *Testing the Limits of Choice of Law Clauses: Franchise Contracts as a Case Study*, 74 Marq. L. Rev. 57, 72-76 (1990) (describing "several errors in the court's analysis"); *Modern Comput. Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 743 (8th Cir. 1989) (Heaney, J., dissenting) ("In my view, *Tele-Save* is based on faulty reasoning.").

Section 1334.06(E) provides: "In connection with the sale or lease of a business opportunity plan, any provision in an agreement restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state, is void with respect to a claim otherwise enforceable under sections 1334.01 to 1334.15 of the Revised Code."

Section 1334.15(A) provides: "The general assembly declares that the offer and sale of business opportunity plans is a matter affected with a public interest. The general assembly further declares that it is the intent of this chapter to protect prospective purchasers of business opportunity plans by requiring that sellers provide the purchasers with the information necessary to make an intelligent decision about the business opportunity plan being offered, and that this chapter represents a fundamental public policy for this state."

Section 1334.15(B) provides: "The remedies of sections 1334.01 to 1334.15 of the Revised Code are in addition to remedies otherwise available for the same conduct under federal, state, or local law. Any waiver by a purchaser of sections 1334.01 to 1334.15 of the Revised Code or any venue or choice of law provision that deprives a purchaser who is an Ohio resident of the benefit of those sections is contrary to public policy and is void and unenforceable."

2011 S.B. 196 (adopted June 26, 2012).

With the 2012 amendment Ohio is now the franchisee protection state on steroids. But the amendment was not necessary. It is not necessary under the Restatement § 187(b)(2) for a statute to recite that its policy is fundamental to fall beyond the parties' ability to contract out of it. It only has to *be* fundamental. No thaumaturgic words are required. The Ohio statutes, like many others, cannot reasonably be construed any other way.

There should be nothing wrong with a statute saying it is fundamental policy in order to blunt a bad court ruling when the statute is already fundamental policy in its very nature. Saying the protections cannot be waived is surplusage in a statute that starts out saying what must and cannot be in a valid contract. Lawyers and legislators often say the same thing twice. Some cases note that a non-waivability term cinches these statutes as

- 15 -

fundamental policy that parties cannot contract out of.[5]  But regrettably, some cases go further and hold that a statute is not fundamental because it does not have a non-waivablity term.[6]  That is mistaken and should be rejected.  It is okay to say it twice but that does not mean saying once is not saying it at all.

Thus, Ohio has a "materially greater interest" than Arizona in the determination of the issues this case turns on.  Ohio has an interest in applying its own laws policing the sale of franchises and business opportunity plans within the state and protecting its residents and others from insufficient disclosures and false, misleading, and inconsistent representations.  These interests outweigh any generalized interest Arizona might have in enabling its residents with superior bargaining power to project Arizona *laissez faire* policy into states that require heightened business honesty and disclosure instead.  *See, e.g.*, *Barnes Grp., Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1030 (4th Cir. 1983) (interest of one state in regulating business relationships within its borders is materially greater than another state's generalized interest in protecting the interstate contracts of its domiciliary); *Stickney v. Smith*, 693 F.2d 563, 565 (5th Cir. 1982) (same).

---

[5]  *See, e.g.*, *Wright-Moore Corp.*, 908 F.2d at 132 (relying in part on non-waivability term in Indiana's franchise laws to invalidate choice of New York law provision in franchise agreement: "The public policy, articulated in the nonwaiver provisions of the statute is clear: a franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protections, whether directly through waiver provisions or indirectly through choice of law. This public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement."); *Cottman Transmission Sys., LLC*, 492 F. Supp. 2d at 467-69 (relying in part on non-waivability terms in franchise laws of California, New York, and Wisconsin to invalidate choice of Pennsylvania law provision in franchise agreements).

[6]  *See, e.g.*, *Banek Inc.*, 6 F.3d at 359-61 (reasoning the non-waivability term in Michigan franchise laws "is not so strongly worded" as other states' laws and, therefore, does not reflect a strong enough state policy to void the choice of Georgia law provision in franchise agreement); *Moser*, 2016 WL 6476291, at *6 (concluding the Florida Franchise Misrepresentation Act did not invalidate choice of Arizona law provision in franchise agreement in part because "Florida did not include an anti-waiver provision in the FFMA"); *Sherman*, 2010 WL 3023320, at *6 (same).

Ohio, the state with the most significant relationship to the transaction and the parties, has a fundamental policy of providing protections to purchasers of franchises. Applying Arizona law instead would defeat that fundamental Ohio policy about what happens in Ohio. Ohio has a materially greater interest than Arizona in the resolution of this issue of investor protection for buyers of franchises in Ohio, especially for Ohio residents.

C. **The Choice of Law and Venue Provisions Are Invalid as to the Issues in this Case**

The Arizona choice of law and venue provisions in Zounds' franchise agreement are expressly invalid under Ohio Rev. Code § 1334.06(E), which provides that "any provision in an agreement restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state, is void . . . ." Therefore, these actions must be transferred to Ohio in accordance with the exclusive Ohio venue provision of the Ohio statute to decide them in accordance with Ohio law.

Thus, the Ohio 2012 Amendment requiring Ohio law to be applied takes this case back to the beginning of the Restatement analysis. The Restatement § 6(1) says, "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." An Ohio court has to apply the Ohio law. A federal court in Ohio sitting in diversity jurisdiction also has to apply the forum state's choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and the Ohio legislature said exactly what that choice of law rule is in franchise cases. The Restatement does not reconcile how any court in Ohio has to apply the Ohio statute, notwithstanding the parties' attempt to contract out of it, but a court in a different forum could not find the Ohio law anything less than fundamental Ohio policy for Ohio franchises.

III. **THE FRANCHISE AGREEMENTS' ARIZONA VENUE REQUIREMENT FOR PRE-SUIT MEDIATION VIOLATES THE FRANCHISEES' RIGHT TO OHIO VENUE**

Section 22(C) provides that, at Zounds' election, the Franchisees must mediate their disputes in Arizona before commencing litigation. The Franchisees argue that the pre-suit mediation requirement is enough of a part of the litigation to come within the Ohio prohibition of non-Ohio venue clauses. *See* Ohio Rev. Code § 1334.06(E). The mediation term is intimately bound up with the Franchisees' right to sue. The Franchisees are forbidden to bring suit until "such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by Franchisor." Thus, unlike real mediation, the Franchisees may not decide further mediation is not worth it. They are bound to continue mediating and forbidden to bring suit until the mediator or Zounds allows it.

The Section 22(C) pre-suit mediation requirement is integral to any litigation against Zounds. By tying the litigation to the mediation in this manner, Subsection 22(C) brings itself within the prohibition of Ohio Rev. Code § 1334.06(E), which voids *any* provision in an agreement restricting venue to a forum outside of Ohio. As such, the pre-suit mediation provision is void to the extent it requires the parties to mediate in Arizona as a precondition to suit.

This invalidity of venue may void the "mediation" clause entirely. However, the Franchisees stated in open court that they will mediate, but only in Ohio due to the extra expense of mediating in Arizona. The parties also stipulated in open court to mediation before a United States Magistrate Judge in lieu of the procedure in Section 22(C). The Court holds the parties to that stipulation. Upon transfer of the case to Ohio, mediation before a United States Magistrate Judge will satisfy the Franchisees' obligations.

The parties also dispute whether mediation must be separate for each Franchisee or may be done together. Section 22(C), the mediation clause, does not directly forbid joint mediations of similar disputes involving the same attorneys. Rather, Zounds relies on Section 22(K), which provides in part that "all proceedings arising out of or related to this Agreement . . . will be conducted on an individual, not a class-wide basis, and that

any proceeding between Franchisee, Franchisee's guarantors and Franchisor or its affiliates/officers/employees may not be consolidated with any other proceeding between Franchisor and any other third party."

Zounds contends the mediation is a "proceeding[] arising out of or related to this Agreement" and thus limited to an individual basis with no consolidation. But in so arguing, Zounds hooks itself on the horns of its own dilemma concerning venue. If Section 22(K) applies to the mediation because it is a "proceeding," then the Ohio prohibition of non-Ohio venue terms also applies to the mediation, as this Court otherwise finds. In truth, Zounds has hooked itself on both horns of its dilemma, impaling its venue argument and its non-joinder of mediations argument.

Ohio Rev. Code § 1334.09 voids the class action prohibition in Section 22(K). That section also fairly voids the prohibition on joinder of individual actions, in court or in mediation. The statutory validation of the greater includes the lesser. Zounds' assertion that they will be prejudiced by group mediation is not credible. The Franchisees would be prejudiced by paying their attorneys four times to do the same mediation. Requiring the Franchisees to participate on an individual basis would unjustifiably raise the costs of mediation and further delay resolution of this action by settlement or by adjudication.

Finally, the Magistrate Judge who will conduct the mediation has control over his own docket and proceedings, control of which the franchise agreement cannot strip him. He may decide to do individual mediations, or he may decide to do a joint mediation. This Court cannot and will not direct him how he must proceed.

Accordingly, Zounds' request that individual mediations be ordered is denied.

## IV. TRANSFER OF THE OHIO CASE AND JUDGMENT AGAINST ZOUNDS IN THE ARIZONA CASES

As discussed above, the Northern District of Ohio transferred its case to this Court solely under 28 U.S.C. § 1404(a), which states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought or to any district or division to which all parties have consented." In so doing, the court gave weight to the Arizona venue clause, which would have been valid unless it defeated a fundamental policy of the Ohio Business Opportunity Purchasers Protection Act, which that court did not decide. As the Ohio district court stated, "further adjudication of all pending matters" has now fallen to this Court. (Doc. 33, No. CV-17-00782.)

This Court has taken the next step and answered the question the Ohio court did not reach. The Ohio statutes apply, invalidate the Arizona choice of law and venue clauses, and allow the action to be brought only in Ohio. The Ohio case must be transferred back to Ohio, not because the Ohio court erred in transferring under § 1404(a) in the sequence in which it decided the motions. Rather, it must be transferred back because under these later rulings the substantive Ohio law that binds the parties allows that action to be brought only in Ohio. There is no "other district . . . where it might have been brought." 28 U.S.C. § 1404(a).

This order rules on the merits of Zounds' four declaratory judgment actions filed in this Court. In each Zounds sought a declaration "that Section 22.C of the Franchise Agreement is valid and enforceable and that mediation must occur in Phoenix, Arizona as a condition precedent to the suit Defendants filed in Ohio." (Doc. 1, No. CV-16-01462, at 7; Doc. 1, No. CV-16-01465, at 7; Doc. 1, No. CV-16-0167, at 7; Doc. 1, No. CV-16-01470, at 8.) This order has ruled on that as well and determined that:

    1.    Section 22.C of the Franchise Agreement is invalid and unenforceable to the extent it requires that mediation occur in Phoenix, Arizona as a condition precedent to the suit Defendants filed in Ohio because

    2.    The Ohio Business Opportunity Purchasers Protection Act, Ohio Rev. Code § 1334.06(e), provides that "any provision in an agreement restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state, is void with respect to a claim otherwise enforceable under [the Act]" and the claims Defendants filed in Ohio are claims under the Act, and

3.     Section 22.A of the Franchise Agreement providing that "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Arizona" is invalid and unenforceable with respect to the claims and issues under the Ohio Business Opportunity Purchasers Protection Act that the Franchisees filed in Ohio.

Declaratory judgment shall be entered accordingly against Zounds in the four Arizona actions.

## V.     ATTORNEY FEES

In each of the declaratory actions file in this Court, Zounds prayed for award of costs and attorney fees against each of the Franchisees "pursuant to Section 20(D) of the Franchise Agreement and A.R.S. § 12-341.01." Section 20(D) is an odious one-way fee-shifting term for the benefit of Zounds if it wins in litigation, but not for the Franchisees if they win. Zounds lost in the declaratory actions.

Zounds also prayed for attorney fees under A.R.S. § 12-341.01, which states in part:

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. . . .

B. The award of reasonable attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid.

A.R.S. § 12-341.01(A)-(B).

Zounds brought these declaratory contract actions under Arizona law and sought a fee award under A.R.S. § 12-341.01. It turns out they fail because Arizona law does not validly apply, but the fee-shifting authority of the statute applies in favor of the successful party whether the contract claim succeeded or failed. *See Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 572, 155 P.3d 1090, 1096 (App. 2007) ("An

adjudication on the merits is not a prerequisite to recovering attorneys' fees under A.R.S. § 12-341.01."); *Nat'l Union Fire Ins. Co. v. Aero Jet Servs., LLC*, No. CV-11-1212-PHX-DGC, 2012 WL 510490 (D. Ariz. Feb. 16, 2012) (defendant who obtained dismissal of declaratory judgment action in federal court was "successful party" in "contested action" as required for award of attorney fees under Arizona fee-shifting statute governing contracts), *aff'd sub nom. Nat'l Union Fire Ins. Co. v. 757BD, LLC*, 560 F. App'x 657 (9th Cir. 2014). The assertion of an Arizona contract claim and request for fees under the statute leaves Zounds open to assessment of fees under the statute upon the failure of the Arizona contract claim. *ZB, N.A. v. Hoeller*, 242 Ariz. 315, 395 P.3d 704, 709 (App. 2017) ("When a provision allows for awarding fees only to one party and is silent on awarding fees to the other parties to a contract, fees may be awarded to the other parties pursuant to A.R.S. § 12–341.01.").

An award is in the discretion of the court. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (giving non-exclusive list of factors to consider in exercising discretion). The circumstance that Zounds gave itself, but only itself, a right to award of attorney fees will powerfully favor discretion to equalize and deodorize that odious term. Indeed, it should be a presumptive abuse of discretion not to award attorney fees against an unsuccessful party who used its superior bargaining power to impose such a term.

The Ohio statute also permits award of attorney fees in the circumstances of this case. Ohio Rev. Code § 1334.09 provides that a purchaser may have various remedies for a violation of the Ohio Act, including:

> (B) The court may award to the prevailing party a reasonable attorney fee limited to the work reasonably performed, if either of the following apply:
>
> . . .
>
> (2) The seller or broker committed an act or practice that violates sections 1334.01 to 1334.15 of the Revised Code.

Ohio Rev. Code § 1334.09(B)(2).

The declaratory adjudication in these cases is that Zounds violated Ohio Rev. Code § 1334.06(e) by contracting for venue outside of Ohio and for application of the law of another state.

It is efficient for this Court to conclude the attorney fees aspects of the four Arizona cases because they are reduced to final judgment here, this Court is familiar with the services rendered, and the Franchisees should be paid for those services promptly without having to await adjudication in the Ohio case. Zounds burdened the Franchisees with a multiplicity of actions in a distant forum. Compensation is appropriate.

All of the services rendered in the five cases, except those in the Ohio case before the four actions were filed in this Court on May 12, 2016, are pertinent to all the cases. Therefore, all the fees incurred in all the cases to date are recoverable in every case, but recoverable only once. What is awarded and paid here will not be recoverable again upon conclusion of the Ohio case, unless it has not yet been paid in these actions.

The Franchisees may submit their bills of costs and applications for award of attorney fees under Federal Rule of Civil Procedure 54(d) and Local Rules LRCiv 54.1 and 54.2.

IT IS THEREFORE ORDERED that the Zounds Defendants' Renewed Motion to Dismiss Amended Complaint or, Alternatively, to Stay Proceedings and Compel Mediation (Doc. 43) is denied.

IT IS FURTHER ORDERED that Case No. CV-17-00728 is deconsolidated and the Clerk shall transfer the case to the United States District Court for the Northern District of Ohio.

IT IS FURTHER ORDERED that the Clerk enter judgment in consolidated Cases No. CV-16-01462, No. CV-16-01465, No. CV-16-01467, and No. CV-16-01470 declaring and adjudging as follows:

1.    Section 22.C of the Franchise Agreement is invalid and unenforceable to the extent it requires that mediation occur in Phoenix, Arizona as a condition precedent to the suit Defendants filed in Ohio because

2.      The Ohio Business Opportunity Purchasers Protection Act, Ohio Rev. Code § 1334.06(e), provides that "any provision in an agreement restricting jurisdiction or venue to a forum outside of this state, or requiring the application of laws of another state, is void with respect to a claim otherwise enforceable under [the Act]" and the claims Defendants filed in Ohio are claims under the Act, and

3.      Section 22.A of the Franchise Agreement providing that "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Arizona" is invalid and unenforceable with respect to the claims and issues under the Ohio Business Opportunity Purchasers Protection Act that the Franchisees filed in Ohio.

The Clerk shall terminate these cases in this Court.

Dated this 15th day of September, 2017.

_____
Neil V. Wake
Senior United States District Judge